# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALLEN MOURE**, Individually and on Behalf of All Others Similarly Situated, | Case No.: 3:22-cv-00625-OAW |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| **DIALAMERICA MARKETING, INC.,** | |
| Defendant. | Complaint Filed: May 3, 2022 |

Plaintiff Allen Moure ("Plaintiff") submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.   INTRODUCTION

This class action arises out of the 2021 cyberattack that was perpetrated against Defendant DialAmerica Marketing, Inc., which held in its possession certain personally identifiable information ("PII") of the Plaintiff and the putative Class Members, most of whom are current or former employees of Defendant. The PII compromised in the Data Incident included full names, addresses, Social Security numbers, employee assigned identification numbers, and other personally identifiable information  of individuals stored on its private network.

After extensive arms' length negotiations, the parties have reached a settlement that is fair, adequate, and reasonable. The agreement provides for over $2,000,000 of relief, including: (1) statutory cash payments in the amount of $50 to eligible class members who reside in California; (2) reimbursement of up to $600 of out-of-pocket expenses per class member, including payment for up to five hours of attested lost time, compensable at the rate of $15 per hour; (3) 24 months of identity-theft protection.[1] Plaintiff strongly believes the settlement is favorable to the Settlement Class.[2]

Pursuant to Rule 23(e), Plaintiff moves the Court for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. Accordingly, and relying on the following memorandum of points and authorities, the Declaration of Plaintiff's Counsel Gary M. Klinger in Support of Pls.' Unopposed. Motion. for Prelim. Approval, ("Klinger Dec."), and the Settlement

---

[1] The Settlement Agreement ("Agr.") in its entirety is attached as Exhibit 1. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.
[2] *Id.* at ¶¶ 4-5.

Agreement and attached exhibits filed herewith, Plaintiff respectfully requests the Court preliminarily approve the Parties' Settlement Agreement and issue the proposed order attached to the Settlement Agreement.

## II.   CASE SUMMARY

### A.  The Data Incident

Defendant DialAmerica is a telemarketing and call center outsourcing service provider headquartered at 960 MacArthur Boulevard, Mahwah, New Jersey 07430. *See* Klinger Dec. ¶ 24(a). In order to be paid for their employment at DialAmerica and to obtain benefits from their employer, current and former employees like Plaintiff were required to turn over certain information, including names, addresses, dates of birth, Social Security numbers, driver's license/state ID numbers, passport numbers, health insurance information, financial account information and other personal identifiable information. Klinger Dec. ¶ 24(b).

A cyberattack was perpetrated against DialAmerica in 2021, resulting in PII of Plaintiff and other Class Members potentially being compromised and exfiltrated by the cybercriminals who perpetrated the attack. In this case, Plaintiff Allen Moure, who is a resident and citizen of Connecticut, alleges that he received a "Notice of Security" letter dated April 6, 2022, on or about that date. Complaint., Dkt. No. 1, ¶ 8. The letter notified Plaintiff that DialAmerica identified unusual activity on its network on July 4, 2021, and thereafter commenced an investigation, which determined that between February 2, 2021, and July 9, 2021, an unauthorized actor had gained access to certain of DialAmerica's systems and viewed or taken data. *Id*. Thus, Plaintiff and the Class Members did not receive notice of the Data Incident for almost nine months after the breach was discovered. *Id.* ¶ 24(d).

As a result of Data Incident, 213,840 individuals had their PII potentially impacted, approximately 7,345 of whom reside in the State of California. Klinger Dec. ¶ 15.

**B. Plaintiff's Complaint**

On May 3, 2022, Plaintiff Allen Moure filed this action seeking class action status for compensation of Plaintiff and all others similarly situated as a result of the Data Incident that occurred in 2021 at DialAmerica. *Id.* ¶ 28. Plaintiff brings causes of action sounding in: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; and (iv) negligence per se. Dkt. 1, Compl., ¶¶ 93-141. Plaintiff alleges he and the proposed class members have or will suffer: (i) a risk of fraud and identity theft; (ii) lost or diminished value of PII; (iii) out-of-pocket expenses associated with mitigation efforts; (iv) lost opportunity costs associated with mitigation efforts, including lost time; (v) invasion of privacy; and (vi) emotional distress, fear, anxiety, nuisance and annoyance. *Id.* ¶ 5. Another action, *Blanco, et al. v. DialAmerica Marketing, Inc.*, Case No. 38-2022-00021920-CU-BC-CTL (Superior Court of California, County of San Diego) is currently pending and concerns the same or similar factual allegations and legal theories as those asserted by Plaintiff, as well as claims brought under California statutes.

 In Moure's complaint, Plaintiff alleges that the Data Incident put him and other class members at risk of imminent, immediate and continuing risk of harm from fraud and identity theft, and has resulted in the accrual of out of pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII. He also alleges that he, and other class members, have been forced to spend time dealing with the effects of the Data Incident. Klinger Dec. at ¶ 25. Plaintiff seeks equitable relief enjoining Defendant from engaging in the wrongful conduct complained of and compelling Defendant to utilize appropriate methods and policies with respect to data collection, storage, and safety. *Id.* ¶ 31. Plaintiff further

seeks an order requiring Defendant to provide identity protection services or funds for the purchase of identity protection services to himself and the rest of the class. *Id.* ¶ 32. Finally, by his complaint, Plaintiff seeks an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. *Id.* ¶ 33.

On July 11, 2022, Defendant filed a Motion to Dismiss asserting that this Court lacks personal jurisdiction and subject matter jurisdiction. Dkt. 18. Plaintiff Moure's deadline to oppose or otherwise respond to the Motion was August 1, 2022. On July 20, 2022, the Parties filed a Joint Motion to Stay Proceedings in which they informed the Court that they had agreed to explore a mediated resolution of the matter and were diligently working together to select a mediator and to find suitable dates for mediation. Dkt. No. 20. The Parties agreed that good faith consideration of an early resolution was warranted. Klinger Dec. ¶ 35. On November 2, 2022, counsel for Plaintiffs Moure, Daniel Blanco, Rafael Blanco, and DialAmerica engaged in mediation with the Honorable Wayne R. Andersen (Ret.) of JAMS. Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. *Id*. ¶ 38. Although the case did not settle that day, after multiple calls with Judge Andersen, the Parties were able to reach an agreement on all the principal terms of settlement for this matter.

On December 9, 2022, the Parties filed a Joint Motion for Scheduling Order with the Court in which they informed the Court that they had agreed to settlement in principle and requested 60 days to finalize the settlement and file a motion for preliminary approval of class settlement. *Id.* ¶ 39. In response, on December 14, 2022, this Court ordered the parties to file this Motion for Preliminary Approval of a Class Settlement by February 8, 2023. *Id.* ¶ 40.

The Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. *Id.* ¶ 41. The Settlement Agreement ("Agr.") was finalized by the Parties on February 7, 2023. *Id.* ¶ 42. It is the opinion of Plaintiff and proposed settlement class counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Class. *Id.* ¶ 43.

## III.    SUMMARY OF SETTLEMENT

The settlement negotiated on behalf of the Class provides for three separate forms of relief: (1) monetary relief capped at $1,300,000.00; (2) identity theft protection; and (3) cybersecurity enhancements. *See generally* Settlement Agreement, Ex. 1 ("Agr."). The Settlement provides for relief for a Settlement Class defined as:

> All persons whose full name and other personally identifying information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021. The Settlement Class specifically excludes: (i) DialAmerica and its respective officers and directors; (ii) all members of the Settlement Class who timely and validly request exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contendere* to any such charge.

Agr. ¶ 1.30. The Settlement Class is estimated to include approximately 213,840 individuals, and includes a California Settlement Subclass defined as:

> All persons whose full name and other personally identifying information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021, and who were residing in California between February 2, 2021 and July 9, 2021.

*Id.* ¶ 1.2.

### A.  Settlement Benefits

#### 1.  Reimbursement for Lost Time and Ordinary Expenses

The Settlement Agreement provides Settlement Class Members who submit a valid claim may receive up to $600 per person for reimbursement of ordinary expenses incurred as a result of the Data Incident, such as: bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; fees for credit reports, credit monitoring, or other identity theft insurance product purchased between February 2, 2021 and the Claims Deadline. Additionally, as part of the $600 ordinary expense reimbursement, Settlement Class Members who submit a valid claim may receive compensation at $15 per hour for up to five (5) hours spent dealing with the Data Incident. Examples could include time spent dealing with replacement card issues, reversing fraudulent charges, or other mitigation measures undertaken by Settlement Class Members.

#### 2.  Reimbursement for Extraordinary Expenses

All members of the Settlement Class who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for up to $6,000 if: (1) the loss is an actual, documented and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; (3) the loss occurred between February 2, 2021 and the Claims Deadline; (4) the loss is not already covered by the out-of-pocket expense categories; and (5) the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

### 3. California Statutory Benefit

California Settlement Subclass Members are also eligible for a California statutory damages award in the amount of Fifty Dollars and Zero Cents ($50.00) each. Agr. ¶ 2.3.

### 4. Credit Monitoring and Identity Theft Protections

All Settlement Class Members will be eligible to claim two years credit monitoring services through IDX upon submission of a valid Claim Form. If the settlement is ultimately approved, Class Members making a claim for the credit monitoring will be provided with a code required to activate credit monitoring. Identity Protection Services through IDX provides single bureau credit monitoring, dark web monitoring, $1M reimbursement insurance, fully managed identity recovery and lost wallet assistance. If a Settlement Class Member claims the 24-month subscription to IDX's Identity Protection Services, he or she must activate the service within 180 days from the date that the activation codes are sent.

### 5. Data Security Enhancements

DialAmerica has agreed to implement and maintain certain cybersecurity and business practice enhancements after the Data Incident and due to this Settlement for a period of at least five years following the Effective Date. The enhancements and business practices are designed to maintain DialAmerica's security posture, to provide protection against threats now and in the future, specifically with respect to current and former employee PII. *Id.* ¶ 2.5. Accordingly, these security enhancements directly benefit the Settlement Class, whose PII remain in DialAmerica's computer systems.

### B.  The Notice and Claim Process

1. Notice

The Parties agreed to use Angeion Group LLC ("Angeion") as the Notice Specialist and Claims Administrator in this case (the "Claims Administrator"). *Id*. ¶ 3.1(g). The cost of notice and claims administration will be paid by DialAmerica separate and apart from the funds available to Settlement Class Members. *Id*. ¶ 3.2  The Notice plan provides for individual notice to Settlement Class Members by the Claims administrator by the email address (where available), and last known physical address of each Settlement Class Member that DialAmerica has on record. *Id.*¶ 3.2(a).

The Claims Administrator will also establish a dedicated settlement website that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; (v) the operative Class Action Complaint, [Dkt. No. 1], filed in the Litigation; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically. *Id.*¶ 3.2(b). Class Members will be able to submit Claim Forms through the website. *Id.* The Claims Administrator will also make a toll-free help line available to provide Settlement Class Members with additional information about the Settlement. *Id.* ¶ 3.2(e).

2. Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting

their claim, and decide whether they would like to opt-out or object. Klinger Dec. ¶ 62. Class Members will have until ninety (90) days after the notice is issued to complete and submit their Claim Form to the Claims Administrator, either by mail or online. *Id.* ¶ 63. The Claim Form is written in plain language to facilitate Settlement Class Members' ease in completing it. *Id.* ¶ 64; Agr., Ex. A. The Claims Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. Klinger Dec. ¶ 66. Should a claim be incomplete or lacking sufficient documentation, the Claims Administrator shall request additional information and give the claimant thirty (30) days to cure the defect. *Id.* ¶ 67. Moreover, where a claim is rejected in whole or in part, for reasons other than the fact that the claim is not facially valid, the claim shall be referred to the claims referee. *Id.* ¶ 68.

3.   Requests for Exclusion and Objections

Settlement Class Members will have up to and including sixty (60) days from the Notice Commencement Date to object to or to submit a request for exclusion from the Settlement. *Id.* ¶ 69. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. *Id.* ¶ 80.

To be excluded from the Settlement, Settlement Class Members must make their request in writing, and must clearly manifest their intent to be excluded from the class. *Id.* ¶ 70. Any Member of the Settlement Class who elects to be excluded shall not (i) be bound by any order or the Judgment; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights by

9

virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement. *Id.* ¶ 71.

Any Settlement Class Member who wishes to object shall submit a timely written notice of his or her objection by the Objection Date. *Id.* ¶ 74. The objection to the Settlement Agreement must include: (i) the objector's full name and address; (ii) the case name and docket number - *Moure v. DialAmerica Marketing, Inc.,* Case No. 3:22-cv-00625-OAW (D. Conn.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

### C. Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to Plaintiffs in this action and the Plaintiffs in the *Blanco* action in the amount of $2,000 each. *Id.* ¶ 76.

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiff negotiated their fees and costs separate from the benefit to Class Members, in the amount of $600,000 for fees and costs combined. *Id.* ¶ 78. Like the Class Representatives' service awards and the cost of notice and claims administration, costs and fees are to be paid by DialAmerica outside of any funds available to Settlement Class members. *Id.* ¶ 79.

Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Class Representatives' Service Awards prior to filing the Motion for Final Approval of Class Action Settlement, and prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id.* ¶ 80.

## IV.    LEGAL STANDARD

Federal Courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the class could hope to obtain. *See Wal – Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy" favoring settlement, "particularly in the class action context."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y.2006).

Preliminary approval of a class action settlement "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full – scale hearing as to its fairness." *Menkes v. Stolt – Nielsen S.A.,* 270 F.R.D. 80, 100 (D. Conn. Sept. 10, 2010), quoting *In re Traffic Exec. Ass'n – E. R.R.,* 627 F.2d 631, 634 (2d Cir. 1980). As such, "it is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies…, and where the settlement appears to fall within the range of possible approval." *Id.*, quoting *Reade–Alvarez v.*

*Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y.2006); *see also, e.g., Authors Guild v. Google, Inc.,* No. 05 Civ. 8136, 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009); *Chin v. RCN Corp.*, No. 08 Civ. 7349, 2010 WL 1257586, at *2 (S.D.N.Y. Mar.12, 2010).

In granting preliminary approval, courts direct notice to be provided to class members, who are given the opportunity to meaningfully evaluate their participation in a proposed settlement. *Menkes*, 270 F.R.D. at 105; *see also In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102. At the final fairness hearing, settlement class members may be heard by the court prior to its determination of whether to grant final approval of the settlement agreement and dismiss the case. *In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102.

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Under the current iteration of Rule 23(e), in weighing a grant of preliminary approval district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The Settlement Agreement here warrants preliminary approval so that persons in the Settlement Class can be notified of the Settlement and provided an opportunity to voice exclusion or objection.

## V.   ARGUMENT

### A.  The Settlement Class Should be Preliminarily Certified

Plaintiff here seeks to certify, for settlement purposes, a class defined as: "all persons whose full name and other personally identifiable information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021." Klinger Dec. ¶ 43. The Settlement Class is estimated to include approximately 213,840 individuals and includes a California Settlement Subclass defined as: all persons whose full name and other

personally identifying information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021, and who were residing in California between February 2, 2021 and July 9, 2021." Id. ¶ 44.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In determining whether to preliminarily approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014).

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is

anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*. In this Circuit, courts have found that "[i]n deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. at 158, quoting *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004); *see also Manker v. Spencer*, 329 F.R.D.110, 114 (D. Conn. 2018),  quoting *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997) ("Rule 23 is given a liberal rather than restrictive construction and courts are to adopt a standard of flexibility" in deciding whether to grant certification). Because the Settlement Class and the California Settlement Subclass meet all requirements for certification under Rule 23, this Court should grant Plaintiff's request.

## 1.   The Proposed Class is Sufficiently Numerous

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc*., 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995); *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273 (D. Conn, 2018). Here, the Parties have identified approximately 213,840 individuals

who are a part of the Settlement Class, approximately 7,345 of whom who are also a part of the California Settlement Subclass. Klinger Dec. ¶ 46. The large number of persons in the Settlement Class clearly renders joinder impracticable. As such, the numerosity requirement is easily satisfied.

### 2.   Questions of Law and Fact Are Common to the Class

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175, citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) (*per curiam*). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. Mar. 19, 2014), quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006).

Here, the commonality requirement is met because Plaintiff can demonstrate that there are numerous common issues of evidence and proof that would ensure that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores* at 350. For example, whether DialAmerica failed to adequately safeguard the PII of Plaintiff and other Settlement Class Members is a question common across the entire class. DialAmerica's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether DialAmerica failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident; and

- Whether DialAmerica's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiff in his Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiff has met the commonality requirement of Rule 23.

### 3.   Plaintiff's Claims and Defenses are Typical of the Class

Typicality under Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *see also Edwards*, 2018 WL 3715273. The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol,* 126 F.3d at 376.

Here, Plaintiff's and Settlement Class Members' claims all stem from the same event—the Data Incident at issue in the Complaint—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiff's and Settlement Class Members' data. Thus, Plaintiff's claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

### 4.   Plaintiff Will Provide Fair and Adequate Representation of the Class

A representative plaintiff must be able to provide fair and adequate representation for the class. Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy of representation requirement, plaintiffs

must establish that: (1) the there is no conflict of interest between the class representatives and other members of the class; and (2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 156 (S.D.N.Y. Nov. 26, 2002), quoting *Marisol*, 126 F.3d at 378; *see also Amchem,* 521 U.S. at 624.

Here, Plaintiff's interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiff and Settlement Class Members' data was all allegedly compromised in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for credit monitoring and identical monetary relief. Moreover, each of their data will continue to be safeguarded in the future by the security protections DialAmerica has put into place.

Further, counsel for Plaintiff Moure and counsel for plaintiffs in the *Blanco* action have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Klinger Dec. ¶¶ 1-19; Declaration of Terence R. Coates, Ex. 3; Declaration of William B. Federman, Ex. 4. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

### 5. Because Common Issues Predominate Over Individualized Ones, Class Treatment is Superior

"Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015), quoting *In re U.S. Foodservice Inc., Pricing Litig.*, 729 F.3d at 118.). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*,

521 U.S. at 623. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova,* 213 F.R.D. 113, 130 (E.D.N.Y. Feb., 28, 2003), citing *In re Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.,* 780 F. 3d 128 (2d Cir. 2015), quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and the Settlement Class, and whether Defendant breached that duty. The common questions that arise from DialAmerica's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home

Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendants' alleged conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

### B.  The Terms of the Settlement are Fair, Reasonable, and Adequate

After determining that certification of the Settlement Class is appropriate, the court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. Under the current iteration of the Rule, notice is only justified where the parties can show that the court will "likely" be able to approve the proposed settlement. Fed.

R. Civ. P. 23(e)(1)(i). Thus, consideration on preliminary approval requires an initial assessment of factors to be fully considered on final approval, namely that (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *In re Frontier Commc'ns Corp.,* 2022 WL 4080324 (D. Conn. 2022), citing *Amchem,* 521 U.S. at 620; *see also In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. Jan. 28, 2019);  Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Second Circuit had developed its own list of factors for consideration, finding preliminary approval of a proposed class action settlement is warranted where it is the result of "serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies. . . and where the settlement appears to fall within the range of possible approval." *See Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153,157 (E.D.N.Y. Sept. 24 2009) ; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. Oct. 16, 1997); *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also* Manual for Complex Litigation, § 30.41 (3d ed. 1995). In making this determination, Second Circuit Courts examine fairness, adequacy, and reasonableness of a class settlement according to the nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal – Mart,* 396 F.3d at 117, citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds).

In reviewing the Settlement for substantive fairness, reasonableness, and adequacy, Plaintiff will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the *Grinnell* factors historically considered by Second Circuit Courts in order to demonstrate that the Settlement falls well within the "range of possible approval," is "likely" to be granted final approval and warrants preliminary approval so that notice can issue to the class.

1. The Settlement Warrants Preliminary Approval Under Rule 23(e)

   a. **The Plaintiff and Proposed Settlement Class Counsel have adequately represented the Settlement Class**

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiff has maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Klinger Dec. ¶ 77. Plaintiff does not have any conflicts with the proposed class and has adequately represented Settlement Class Members in the litigation.

Proposed Settlement Class Counsel has also adequately represented the class. Co-Lead Counsel has extensive experience in class action litigation generally, and data breach cases in

particular. *See* Klinger Dec. ¶¶ 2-19, Ex. A; *see also* Coates Dec. and Federman Dec. In negotiating the Settlement, Co-Lead Counsel was thus well positioned and able to benefit from years of experience and familiarity with the factual and legal bases for this case.

Although formal discovery had not begun, such discovery is not required for a settlement to be adequate. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Plummer v. Chem. Bank* 668 F.2d 654, 658(2d Cir. 1982) ("Although negotiations in the instant case were conducted by undesignated class representatives without formal pretrial discovery, this, standing alone, did not preclude judicial approval."); *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, *6 (S.D.N.Y. June 7, 2011) (approving settlement where no formal discovery had taken place but the parties had "completed enough investigation to agree on a reasonable settlement); *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862 at *4 (E.D.N.Y. Feb. 18, 2011). ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating") (internal quotations omitted). "In fact, informal discovery designed to develop a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement." *Castagna*, 2011 WL 2208614, *6, citing *Jones v. Amalgamated Warbasse Houses, Inc*., 97 F.R.D. 355, 360 (S.D.N.Y.1982) ("Although little formal discovery has occurred, the parties freely exchanged data during settlement talks. In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged").

Here, proposed Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. Klinger Dec.

¶ 37. Accordingly, Plaintiff and Co-lead Counsel here have adequately represented the Class, and this factor weighs in favor of preliminary approval.

### b.   The Settlement was negotiated at arms' length and is absent of any collusion

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2007); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019); *Kennedy v. Whitley,* 536 F. Supp. 3d 261, 265 (D. Conn. 2021).

Here, both Parties were represented by experienced counsel, and the settlement was only reached after a formal mediation and subsequent hard-fought negotiations conducted by an excellent mediator, Hon. Wayne R. Andersen (Ret.). There is no evidence of collusion, and the use of a neutral mediator confirms this. This factor weighs in favor of preliminary approval.

### c.   The relief provided for the class is adequate

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The Settlement negotiated on behalf of the class provides for significant relief. The Settlement provides for substantial monetary relief, including reimbursement of out-of-pocket costs up to $600 per class member, compensation for lost time of up to 5 hours at $15 per hours, up to $6,000 for reimbursement of extraordinary losses associated with fraud or identity theft, and a statutory payment of $50 for California Settlement Subclass Members. Further, each Settlement Class Member is eligible to claim 24 months of identity-theft protection services at Defendant's expense.

Additionally, DialAmerica has undertaken specific data security enhancements ensuring Plaintiff's and Settlement Class Member's data is better protected in the future.

The Settlement terms are consistent with, and in fact better than, agreements in other similar data breach cases across the country. *See e.g., Baksh et al. v. IvyRehab Network, Inc.,* No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge et al v. Saint Francis Healthcare Sys.,* No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements).

As the relief provided is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

i.   The costs, risks, and delay of trial and appeal are great

The relief provided for by the Settlement Agreement is significant, especially in light of the costs, risks, and delay of further litigation. The Settlement Agreement guarantees Settlement Class Members the opportunity to make a claim for the monetary benefits outlined above, *plus* 24 months of identity-theft protection. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiff strongly believes in the merits of the case, he also understands that Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiff to the risk

inherent in trying to achieve and maintain class certification, and prove liability—both factors considered under the test for final approval established by *Grinnell*.

Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiff disputes the defenses it anticipates DialAmerica will likely assert—but it is obvious that his success at trial is far from certain. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

> ii. <u>The proposed method of distributing relief, including the method of processing class-member claims, is objective, efficient, and fair</u>

As described above, the Claims Administrator will be responsible for assessing claims and distributing relief. Class Members will have ninety (90) days from the completion of Notice to complete and submit a claim form. The Claims Administrator will be responsible for evaluating the claims and the evidence submitted, requesting additional documentation and/or information where the claim form is insufficient, and awarding funds. Where a Class Member wishes to dispute their award, the Settlement provides a procedure for doing so. Thus, the procedure provided for by the Settlement Agreement is objective, efficient, and fair

iii. <u>The attorneys' fees, costs and service awards that Plaintiff will
request this Court approve are reasonable</u>

By separate motion, Plaintiff will seek Court approval of attorneys' fees and costs
*combined* in the amount of $600,000, and a service award for Class Representatives Moure and
the Blancos in the amount of $2,000 each. Klinger Dec. ¶¶ 76, 78. This amount represents less
than 30% of the benefit negotiated—not including the value of the data security measures
implemented by DialAmerica. Such requests are well within the range of those regularly accepted
by Second Circuit Courts. *See Warren v. Xerox Corp.*, No. 01-CV-2909 (JG), 2008 WL 4371367,
at *22 (E.D.N.Y. Sept. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33%
of the total settlement value, and finding such a sum "comparable to sums allowed in other cases");
*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003)
(finding 33% in attorneys' fees alone to be reasonable)(collecting cases); *Beckman v. KeyBank,
N.A.,* 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to
Plaintiffs); *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007)
(granting award of $10,000 to named plaintiffs); *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D.
118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to
$85,000 are commonly accepted). While Plaintiff will fully brief their request by separate motion
prior to Settlement Class Members' deadline to object to or exclude themselves from the
Settlement, the attorneys' fees, costs, and service awards sought clearly fall within the range of
possible approval.

iv. <u>No additional agreement related to the settlement exist</u>

There are no additional agreements that require identification and/or examination under
Rule 23(e)(3).

### *d.   The Settlement Treats Class Members Equitably to Each Other*

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Every Settlement Class Member has the opportunity to submit the same claims for monetary compensation, and for 24 months of identity-theft protection. While California Settlement Subclass Members may make a claim for a statutory payment of $50 (included within the $600 individual cap on out-of-pocket expenses), this is justified by the fact that California residents are eligible for statutory recovery that does not apply to all Settlement Class Members at large. Accordingly, and because the Settlement Agreement meets all of the required criteria under Rule 23 (e), preliminary approval should be granted.

2.   The Settlement Warrants Preliminary Approval After Consideration of the *Grinnell* Factors

Prior to the revisions to Rule 23, the Second Circuit relied upon the nine factors set forth in *City of Detroit v. Grinnell Corp.* to guide its assessment of whether a class action settlement should be approved. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds). While preliminary approval requires only an initial evaluation of the settlement and Rule 23 has been since amended, the factors remain instructive and have been used by Second Circuit Courts in evaluating settlements even after 2018. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (considering both the Rule 23 and *Grinnell* factors on consideration of a motion for preliminary approval).

*First,* the complexity, expense, and likely duration of the litigation support preliminary approval. As discussed *supra*, at Section V(B)(1)(c)(ii), continued litigation is likely to be complex, long, and expensive. Plaintiff would likely have to survive a motion to dismiss to even begin litigation and would later likely need to prevail on summary judgment and both gain and maintain class certification through trial. Additionally, the amount of data expert analysis and

27

testimony needed to bring this case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. Thus, this factor weighs in favor of approval.

*Second,* the reaction of class members is not yet apparent. While the named Plaintiff has reviewed and approved the Settlement Agreement, other Settlement Class Members have not yet had the same opportunity. As such, this factor is appropriately examined after Notice has issued to the Class and Settlement Class Members have had the opportunity to make a claim, exclude themselves, or object to the Settlement.

*Third,* the stage of the proceedings and the amount of discovery completed supports settlement approval. While the case is early in litigation, the Parties' negotiations included an exchange of information sufficient to allow both Parties to assess the claims and defenses at issue. Early settlement, whereas here, the Parties are adequately informed to negotiate, is to be commended. *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement an avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). As discussed more fully above at Section V(B)(1)(a), the Parties had more than enough information to adequately evaluate the claims and defenses at issue. As such, this factor weighs in favor of approval.

*Fourth, Fifth, and Sixth,* the risks of establishing liability, damages, and maintaining a class through trial weigh in favor of Settlement Approval. Although Plaintiff firmly believes in the merits of the case, litigating in such an evolving area of law involves significant risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the

uncertainty of the outcome." *Id.*, quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv.*, *Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation."), citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 185 (W.D.N.Y. 2005). While Plaintiff remains confident in the strength of his claims, additional litigation leaves open the risk that he will be unable to meet the burdens of establishing liability, proving causation and damages, and gaining and maintaining certification through trial. Thus, these factors weigh in favor of Settlement approval.

*Seventh*, the ability of Defendant to withstand a greater judgment is not at issue here. Additionally, Courts have noted that this factor "standing alone does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86, and therefore the Court "need not determine whether Defendants could have withstood a larger judgement" in determining whether to approve a settlement agreement. *In re Frontier Commc'ns Corp.*, No. 3:17-cv-01617-VAB, 2022 WL 4080324 (D. Conn. May 20, 2022), citing *Delisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

*Eighth and Ninth*, the Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation. The Settlement affords Settlement Class Members the right to claim significant monetary relief and provides them with 24 months of identity-theft protection measures paid for by Defendant. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. Again, while Plaintiff strongly believes in the merits of his case, he also understands that Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation

would open up Plaintiff to the risks inherent in trying to achieve and maintain class certification and prove liability and damages. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

The *Grinnell* factors weigh in favor of approval of the Settlement—and certainly at least support preliminary approval. As such, this Court should grant Plaintiff's motion and allow notice to issue.

### D.  The Proposed Claims Administrator Will Provide Adequate Notice

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) specifically permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means."

The Notice Plan negotiated here is the best practicable. The Notice plan calls for Notice to issue via email and U.S. mail to the addresses DialAmerica has on record, and used to provide initial notice of the Data Incident to those Settlement Class Members who received it.

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir.2005). There are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice merely must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 114. Second Circuit Courts have explained that a Rule 23 Notice will satisfy due process

where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment". *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977); *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 338 (2d Cir.2006).

The substance of the Notice here is designed to be clear and concise and inform Settlement Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. *See* Agr., Exs. A-C. As such, the proposed Notice Plan should be approved.

## VI.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of both Rule 23 and the *Grinnell* factors demonstrates that final approval is likely, and Notice should issue to the class. For these and the above reasons, Plaintiff respectfully requests this Court certify the class for settlement purposes and grant his Motion for Preliminary Approval of Class Action Settlement.

Dated: February 8, 2023

Respectfully submitted,

/s/ Gary M. Klinger
Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Terence R. Coates
**MARKOVITS, STOCK**
**& DEMARCO, LLC**
119 E Court St., Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

Joseph P. Guglielmo (CT 27481)
Erin Green Comite (CT 24886)
**SCOTT+SCOTT ATTORNEYS AT**
**LAW LLP**
156 S. Main St., P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
jguglielmo@scott-scott.com
ecomite@scott-scott.com

Attorneys for Plaintiffs and the Proposed
Class

32

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on February 8, 2023 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.


*/s/ Gary M. Klinger*
Gary M. Klinger