IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALLEN MOURE**, Individually and on Behalf of All Others Similarly Situated, | Case No.: 3:22-cv-00625-OAW |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S AND CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| **DIALAMERICA MARKETING, INC.,** | |
| Defendant. | Complaint Filed: May 3, 2022 |

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ................................................................. 1

II.   CASE SUMMARY .............................................................. 2

    A. The Data Incident................................................................ 2

    B. Plaintiff's and Class Representatives' Complaints and Procedural Posture................... 3

III.  SUMMARY OF SETTLEMENT ............................................ 5

    A. Settlement Benefits ............................................................ 6

        1.   Reimbursement for Lost Time and Ordinary Expenses............................ 6
        2.   Reimbursement for Extraordinary Expenses ............................ 6
        3.   California Statutory Benefit............................................ 7
        4.   Credit Monitoring and Identity Theft Protections ...................... 7
        5.   Data Security Enhancements ......................................... 7

    B. Fees, Costs, and Service Awards ......................................... 8

    C. Notice And Claims............................................................. 8

        1.   Direct Mail Notice ................................................... 8
        2.   Settlement Website, Toll-Free Number, and Email Address.................. 9
        3.   Claims. ............................................................ 10
        4.   Requests For Exclusion and Objections ............................ 10

IV.   LEGAL STANDARD............................................................ 11

V.    ARGUMENT .................................................................... 13

    A. The Settlement Administrator Provided Notice Pursuant to this Court's
       Preliminary Approval Order and Satisfied Due Process as well as Rule 23 ................ 13

    B. The Settlement Class Should be Certified. ............................... 15

    C. The Settlement Terms are Fair, Adequate, and Reasonable, and Warrant Approval. ... 15

    D. The Settlement Agreement Meets the Requirements of Rule 23 and
       Should be Approved. .................................................... 16

        1.   The Class Representatives and Class Counsel Have Adequately
           Represented the Class. ............................................. 16
        2.   The Settlement was Negotiated at Arm's Length. ...................... 18

3.  The Substantial Monetary Relief Provided for the Settlement Class
    is Adequate.................................................................................................. 19
4.  The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor
    of Final Approval.......................................................................................... 20
5.  The Effectiveness of Any Proposed Method of Distributing Relief
    to the Settlement. ......................................................................................... 22
6.  The Terms of the Proposed Award of Attorneys' Fees Weigh in Favor
    of Final Approval.......................................................................................... 23
7.  There Are No Agreements Required to Be Identified Under Rule 23(e)(3)......... 23
8.  The Settlement Treats Class Members Equitably Relative to Each Other. .......... 23

E.  The Settlement Also Warrants Approval in Light of the *Grinnell* Factors Traditionally
    Considered by Second Circuit Courts................................................................... 24

1.  *Grinnell* Factor 1: The complexity, expense, and likely duration of
    litigation weighs in favor of approval. .......................................................... 24
2.  *Grinnell* Factor 2: Class reaction signals approval of
    the Settlement Agreement............................................................................. 25
3.  *Grinnell* Factor 3: The stage of litigation and discovery completed
    favors approval............................................................................................. 25
4.  *Grinnell* Factors 4, 5, and 6: The risks of establishing liability, damages,
    and maintaining a class action through trial weigh in favor of
    settlement approval. ..................................................................................... 26
5.  *Grinnell* Factor 7: The ability of the Defendant to withstand a greater
    judgment is not at issue here......................................................................... 27
6.  *Grinnell* Factors 8 and 9: The Settlement provides for substantial relief for
    the Settlement Class, especially in light of all attendant risks of litigation. ......... 27

VI. CONCLUSION................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## <u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................... 15

*Babcock v. C. Tech Collections, Inc.*,
  No. 1:14-cv-3124, 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017) .......................................... 22

*Banyai v. Mazur*,
  No. 00-cv-9806, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007)................................................. 20

*Castagna v. Madison Square Garden, LP*,
  No. 09-cv-10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011)................................................ 25

*Cicciarella et al v. Califia Farms, LLC*,
  No. 7:19-cv-08785, 2020 WL 1320866 (S.D.N.Y. 2020) ........................................................ 15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................... passim

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y Sept. 24, 2009)................................................................. 12

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)................................................................... 16

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................... 11

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)................................................................. 11

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. Feb. 18, 2005) ............................................................ 12

*Diaz v. E. Locating Serv. Inc.*,
  No. 1:10-cv 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010).......................................... 25

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................ 20

*Fox v. Iowa Health Sys.*,
  No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021)................................. 21

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. (W.D.N.Y. 2005)..................................................................................... 26, 27

*Godson v. Eltman, Eltman, & Cooper, PC*,
   328 F.R.D. 35 (W.D.N.Y. 2018)..................................................................................... 12

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)......................... 20

*Hadel v. Gaucho*,
   No. 15-cv 3706, 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ............................................ 12

*Hall v. ProSource Technologies, LLC*,
   No. 14-cv 2502, 2016 WL 1555128 (E.D.N.Y. 2016)........................................................ 14

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010).......................................... 20

*Hart v. RCI Hosp. Holdings, Inc.*,
   No. 09-cv-3043, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ............................................ 13

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y. 2015) ....................................................................................... 14

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................................... 18, 26, 27

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)............................................................................................ 26

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)....................................................................... 13, 16, 18

*In re GSE Bonds Antitrust Litig.*,
   No. 19-cv-1704, 2020 WL 3250593 (Slip Op.) ............................................................ 12, 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ........................................................................................... 21

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. June 10, 2009)........................................................................... 16

*In re Interpublic Secs. Litig.*,
   No. 02-cv-6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)............................................ 25

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ................................................................................... 26

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................... 26

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ............................................................................. 24

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d. Cir. 2004)............................................................................... 26

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d (S.D. Fla. 2005) ......................................................................... 24

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. May 29, 2014)............................................................ 11

*Long v. HSBC USA Inc.*,
   No. 14 -cv-6233, 2015 WL 5444651 (S.D.N.Y. Sep. 11, 2015) ........................... 21

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................. 25

*Manley v. Midan Rest. Inc.*,
   No. 14-cv-1693 2016 WL 1274577 (S.D.N.Y. 2016) ........................................... 20

*Massiah v. MetroPlus Health Plan*, *Inc.*,
   No. 11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)................ 19

*McWhorter v. Ocwen Loan Servicing LLC*,
   No. 2:15-cv-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019)........................ 23

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015).................................................................... 20

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)............................................................................................. 13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................................. 13

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
   No. 94-cv-5587, 2003 WL 21136726  (S.D.N.Y. May 15, 2003) ......................... 25

*S.P.A. Secs. Litig.* (*In re Luxottica Group Litig.*),
   233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................... 12

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................... 27

*Springer v. Code Rebel Corp.*,
No. 16-cv-3492, 2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) ................................ 12

*Torres v. Gristede's Operating Corp.*,
No. 04-CV-3316, 2010 WL 2572937 (S.D.N.Y. June 1, 2010) ............................... 14

*Velez v. Majik Cleaning Serv.*, Inc.,
No. 3-cv-8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................ 26

*Wal-Mart Stores, Inc. v. Visa USA Inc.*,
396 F.3d 96 (2d Cir. 2005) ............................................................ 11, 12, 13, 25

*Willix v. Healthfirst, Inc.*,
No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ................................ 20

*Woodward v. NOR–AM Chem. Co.*,
No. Civ-94-0870, 1996 WL 1063670 (S.D. Ala. May 23, 1996) ........................... 24

*Zeltser v. Merrill Lynch & Co.*,
No. 13-cv-1531, 2014 WL 4816134 (S.D.N.Y. Sep.23, 2014) ............................... 20

## STATUTE(S)

28 U.S.C. §1715(b) ..................................................................................... 9

## RULE(S)

Fed. R. Civ. P. 23 ............................................................................... passim

Fed. R. Civ. P. 23(a) ...................................................................................... 15

Fed. R. Civ. P. 23(a) and (b) ......................................................................... 11

Fed. R. Civ. P. 23(b) ...................................................................................... 15

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 13

Fed. R. Civ. P. 23(c)(3) .................................................................................. 13

Fed. R. Civ. P. 23(e) .................................................................... 11, 13, 16, 25

Fed. R. Civ. P. 23(e)(2) .................................................................................. 15

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................ 16

Fed. R. Civ. P. 23(e)(2)(A)-(D) ..................................................................... 15

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................ 18

Fed. R. Civ. P. 23(e)(2)(c) ............................................................................................... 19

Fed. R. Civ. P. 23(e)(3) ............................................................................................. 15, 23

Fed. R. Civ. P. 23(f) ........................................................................................................ 21

## OTHER AUTHORITIES

Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr.,
   "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010) ............... 14

Plaintiff and Class Representative Allen Moure, along with Class Representatives Daniel Blanco, and Rafael Blanco (collectively, "Class Representatives") submit this Memorandum in Support of Plaintiff's and Class Representatives' Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

On April 1, 2024, this Court preliminarily approved a Class Action Settlement between Class Representatives and Defendant DialAmerica Marketing, Inc. ("DialAmerica" or "Defendant"). To address the repercussions of the Data Incident, Class Representatives and Class Counsel created a Settlement based on three categories of relief for Settlement Class Members: (1) up to $6000 in reimbursements for ordinary and extraordinary expenses incurred as a result of the Data Incident including compensation for lost time spent mitigating the effects of the Data Incident; (2) a statutory claim benefit for California residents affected by this Data Incident, and (3) two years of credit monitoring and identity theft protection services for all Class Members. In addition to the benefits described above, and to increase the value of the Settlement to Class Members, the Settlement Agreement provides that Defendant will pay all costs of Notice and Settlement Administration, Class Counsel's attorneys' fees and costs as approved by the Court, and approved Service Awards to Class Representatives—separate and apart from the funds made available by Defendant to pay valid claimants.

Class Counsel have zealously prosecuted Class Representatives' claims, achieving the Settlement Agreement after extensive investigation and negotiations and months of work negotiating and finalizing the Settlement Agreement and associated exhibits. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement

Class Members via first class mail. Class Notice was sent to 100% of the Settlement Class, and reached 96.98% of the Class, easily meeting the due process standard. *See* Declaration of Katrina R. Ashley Re: Notice and Administration ("Admin. Decl."), attached hereto as Exhibit 1, ¶ 9. The Notice provided each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. Out of 221,135 Settlement Class Members, only ten (10) sought to be excluded from the Settlement, and <u>none</u> have objected[1]. The claims period ended on July 30, 2024, and the Settlement Administrator is reviewing claim forms on an ongoing basis.

## II.    CASE SUMMARY[2]

### A.    The Data Incident[3]

Defendant, DialAmerica, is a telemarketing and call center outsourcing service provider headquartered at 960 MacArthur Boulevard, Mahwah, New Jersey 07430. *See* Declaration of Gary M. Klinger in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Klinger MPA Dec."). ¶ 24(a). To be paid for their employment at DialAmerica and to obtain benefits from their employer, current and former employees, like Class Representatives, were required to turn over certain information, including names, addresses, dates of birth, Social Security numbers, driver's license/state ID numbers, passport numbers, health insurance information, financial account information and other personally identifiable information ("PII"). *Id.* ¶ 24(b).

---

[1] In addition to the ten valid opt out requests, one late request for exclusion was received, which was not included.
[2] Apart from Section III.C, which describes the status of the Notice and Claims Process, Sections II and III have been largely adopted from the Memorandum in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, filed February 8, 2023.
[3] The facts in this section are those set forth in the Complaint. Defendant makes no admission as to the facts alleged in the Complaint, and Defendant reserves its right to challenge the alleged facts should the Court deny this Motion, in whole or in part.

A cyberattack was perpetrated against DialAmerica in 2021, resulting in Class Representatives' and other Class Members' personal identifying information ("PII") potentially being compromised and exfiltrated by the cybercriminals who perpetrated the attack. In Plaintiff Moure's Complaint, Plaintiff Allen Moure, who is a resident and citizen of Connecticut, alleges that he received a "Notice of Security" letter dated April 6, 2022, on or about that date. Complaint., Dkt. No. 1, ¶ 8. The letter notified Moure that DialAmerica identified unusual activity on its network on July 4, 2021, and thereafter commenced an investigation, which determined that between February 2, 2021, and July 9, 2021, an unauthorized actor had gained access to certain of DialAmerica's systems and viewed or taken data. *Id.* Thus, Class Representatives and the Class Members did not receive notice of the Data Incident for almost nine months after the breach was discovered. *Id.* ¶ 24(d).

**B.    Plaintiff's and Class Representatives' Complaints and Procedural Posture**

On May 3, 2022, Plaintiff Allen Moure filed this action seeking class action status for compensation for himself and all others similarly situated because of the Data Incident that occurred in 2021 at DialAmerica. Plaintiff Moure brings causes of action sounding in: (i) negligence; (ii) breach of implied contract; (iii) unjust enrichment; and (iv) negligence per se. ECF 1, Compl., ¶¶ 93-141. Plaintiff Moure alleges he and the proposed class members have or will suffer: (i) a risk of fraud and identity theft; (ii) lost or diminished value of PII; (iii) out-of-pocket expenses associated with mitigation efforts; (iv) lost opportunity costs associated with mitigation efforts, including lost time; (v) invasion of privacy; and (vi) emotional distress, fear, anxiety, nuisance and annoyance. *Id.* ¶ 5. Another action, *Blanco, et al. v. DialAmerica Marketing, Inc.*, Case No. 38-2022-00021920-CU-BC-CTL (Superior Court of California, County of San Diego) is currently pending and concerns the same or similar factual allegations and legal theories as those

asserted by Plaintiff Moure, as well as claims brought under California statutes. Plaintiffs in that matter, Daniel Blanco, and Rafael Blanco, joined this Settlement.

In Plaintiff Moure's complaint, he alleges that the Data Incident put him and other class members at risk of imminent, immediate and continuing risk of harm from fraud and identity theft and has resulted in the accrual of out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII. Plaintiff Moure also alleges that he, and other class members, have been forced to spend time dealing with the effects of the Data Incident. Klinger MPA Dec. at ¶ 25. In his complaint, Plaintiff Moure seeks equitable relief enjoining Defendant from engaging in the wrongful conduct complained of and compelling Defendant to utilize appropriate methods and policies with respect to data collection, storage, and safety. *Id.* ¶ 31. Plaintiff Moure further seeks an order requiring Defendant to provide identity protection services or funds for the purchase of identity protection services to himself and the rest of the class. *Id.* ¶ 32. Finally, by his complaint, Plaintiff Moure seeks an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. *Id.* ¶ 33.

On July 11, 2022, Defendant filed a Motion to Dismiss asserting that this Court lacks personal jurisdiction and subject matter jurisdiction. ECF 18. Plaintiff Moure's deadline to oppose or otherwise respond to the Motion was August 1, 2022. On July 20, 2022, the Parties filed a Joint Motion to Stay Proceedings in which they informed the Court that they had agreed to explore a mediated resolution of the matter and were diligently working together to select a mediator and to find suitable dates for mediation. The Parties agreed that good faith consideration of an early resolution was warranted. Klinger MPA Dec. ¶ 35. On November 2, 2022, counsel for Class Representatives Moure, Daniel Blanco, and Rafael Blanco, and DialAmerica engaged in mediation

4

with the Honorable Wayne R. Andersen (Ret.) of JAMS. Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's and Class Representatives' claims and Defendant's defenses. *Id.* ¶ 38. Although the case did not settle that day, after multiple calls with Judge Andersen, the Parties were able to reach an agreement on all the principal terms of settlement for this matter.

The Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. *Id.* ¶ 41. The Settlement Agreement ("Agr.") was finalized by the Parties on February 7, 2023. *Id.* ¶ 42.

Subsequently, Class Representatives prepared and filed their Motion for Preliminary Approval on February 8, 2023. Preliminary approval was granted by this Court on April 1, 2024. ECF 48. Notice of the Settlement was sent to the class, and the Settlement was favorably received. Class Representatives now seek final approval of the Settlement.

## III.    SUMMARY OF SETTLEMENT

The settlement negotiated on behalf of the Class provides for three separate forms of relief: (1) monetary relief up to $1,300,000.00; (2) identity theft protection; and (3) significant cybersecurity enhancements. *See generally* Settlement Agreement, Ex. 1 ("Agr."). The Settlement provides for relief for a Settlement Class defined as:

> All persons whose full name and other personally identifying information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021. The Settlement Class specifically excludes: (i) DialAmerica and its respective officers and directors; (ii) all members of the Settlement Class who timely and validly request exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contendere* to any such charge.

Agr. ¶ 1.30. The Settlement Class consists of 221,135 individuals, and includes a California Settlement Subclass defined as:

> All persons whose full name and other personally identifying information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021, and who were residing in California between February 2, 2021 and July 9, 2021.

*Id.* ¶ 1.2.

### A.   Settlement Benefits

#### 1.   Reimbursement for Lost Time and Ordinary Expenses

The Settlement Agreement provides Settlement Class Members who submit a valid claim may receive up to $600 per person for reimbursement of ordinary expenses incurred as a result of the Data Incident, such as: bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; fees for credit reports, credit monitoring, or other identity theft insurance product purchased between February 2, 2021 and the Claims Deadline. Additionally, as part of the $600 ordinary expense reimbursement, Settlement Class Members who submit a valid claim may receive compensation at $15 per hour for up to five (5) hours ($75 total) spent responding to the Data Incident. Examples could include time spent dealing with replacement card issues, reversing fraudulent charges, or other mitigation measures undertaken by Settlement Class Members.

#### 2.   Reimbursement for Extraordinary Expenses

All members of the Settlement Class who suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for up to $6,000 if: (1) the loss is an actual, documented and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; (3) the loss occurred between February 2, 2021 and the Claims Deadline; (4) the

loss is not already covered by the out-of-pocket expense categories; and (5) the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

### 3.  California Statutory Benefit

California Settlement Subclass Members are also eligible for an additional payment for a California statutory damages award in the amount of Fifty Dollars and Zero Cents ($50.00) each. Agr. ¶ 2.3.

### 4.  Credit Monitoring and Identity Theft Protections

All Settlement Class Members are eligible to claim two years credit monitoring services through IDX upon submission of a valid Claim Form. If the settlement is ultimately approved, Class Members making a claim for the credit monitoring will be provided with a code required to activate credit monitoring. Identity Protection Services through IDX provides single-bureau credit monitoring, dark web monitoring, $1M reimbursement insurance, fully managed identity recovery and lost wallet assistance. Settlement Class Members who claim the 24-month subscription to IDX's Identity Protection Services, he or she must activate the service within 180 days from the date that the activation codes are sent.

### 5.  Data Security Enhancements

As part of the Settlement DialAmerica agreed to implement and maintain certain additional cybersecurity and business practice enhancements after the Data Incident for a minimum period of five years following the Effective Date. The enhancements and business practices are designed to maintain DialAmerica's security posture, to provide protection against threats now and in the future, and specifically with respect to current and former employee PII. *Id.* ¶ 2.5. Accordingly,

these security enhancements directly benefit the Settlement Class, whose PII is still stored by DialAmerica.

### B.    Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to each Class Representative in the amount of $2,000 each ($6,000 total). *Id.* ¶ 7.3. The Service Awards are meant to compensate Class Representatives for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions.

After agreeing to the terms of the settlement on behalf of the Class, Class Counsel negotiated their fees and costs separate from the benefits that will be made available to Class Members, in the amount of $600,000 for fees and costs combined. *Id.* ¶ 7.2.

Class Counsel submitted a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards, filed June 17, 2024. ECF 59. This motion was filed prior to Settlement Class Members' June 30, 2024, deadline to exclude themselves from or object to the Settlement Agreement and was posted on the Settlement Website.

### C.    Notice And Claims

1. <u>Direct Mail Notice</u>

The Parties agreed and the Court approved Angeion Group, LLC ("Angeion") as the Notice Specialist and Claims Administrator in this case. The cost of Notice and Claims Administration will be paid by Defendant separately and apart from the Settlement Payment available to Settlement Class Members.

Angeion began its work by providing CAFA notice on behalf of Defendant. On February 17, 2023, pursuant to 28 U.S.C. §1715(b), Angeion, on behalf of the Defendant, caused notice of this settlement and related materials to be sent to the Attorneys General of all U.S. states and territories as well as the Attorney General of the United States. Admin Decl. ¶ 5.

On April 2, 2023, Defendant's Counsel provided Angeion with a data file containing 222,375 records with the names and mailing addresses of Settlement Class Members. *Id*. ¶ 6. The Class Member population consists of 221,135 unique records. *Id*. Angeion coordinated and caused the Postcard Notice to be mailed via First-Class Mail to all 221,135 Settlement Class Members. *Id*. ¶ 7. The Notice mailing was completed on or before May 1, 2024, in accordance with the Amended Preliminary Approval Order. *Id*.

Prior to the mailing, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"). *Id*. ¶ 8.

Notices that were returned by the USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. Notices that were returned by the USPS without a forwarding address were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. As a result of the above-described efforts, of the 47,628 Notices returned as undeliverable by the USPS, 40,963 were re-mailed to updated addresses. *Id*. ¶ 9. Ultimately, Angeion estimates that 96.98% of the 221,135 Settlement Class Members received direct notice of the Settlement. *Id*.

2.  Settlement Website, Toll-Free Number, and Email Address.

On May 1, 2024, Angeion published the Settlement Website, www.dialamericadatasettlement.com. *Id*. ¶ 11.  The Settlement Website was designed to be user-friendly and make it easy for Settlement Class Members to view general information about this

class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. *Id*. Settlement Class Members can submit a Claim Form via the Settlement Website's secure online claim portal or download and print a Claim Form to be completed returned by mail. The Settlement Website also included a "Contact Us" page whereby Settlement Class Members can send an email with any additional questions to a dedicated email address, info@DialAmericaDataSettlement.com. *Id*. As of July 31, 2024, the Settlement Website has received 15,873 website visits. *Id.*

On May 1, 2024, Angeion activated the following toll-free number dedicated to this Settlement: 1-844-777-0861, which is available twenty-four hours per day. *Id*. ¶ 12. Settlement Class Members can call and interact with an interactive voice response ("IVR") system that provides important settlement information and answers to frequently asked questions. *Id*.

   3. <u>Claims.</u>

The timing of the Claims Process was structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. As of July 31, 2024, Angeion has received 4,636 timely-filed claims. Admin Decl. ¶ 14. This claims rate is evidence of the positive reception of the Settlement by the Settlement Class.

   4. <u>Requests For Exclusion and Objections</u>

The deadline to object to or request an exclusion from the Settlement was June 30, 2024. Like the timing of the Claims Process, the timing with regard to objections and requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which was filed fourteen (14) days prior to the deadline for Settlement Class Members to

object or exclude themselves from the Settlement. As of July 31, 2024, Angeion had received only ten (10) timely requests for exclusion. Admin Decl. ¶ 16. As of July 31, 2024, Angeion was not aware of and had not received any objections. *Id*. ¶ 17.

## IV.    LEGAL STANDARD

Class Representatives bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014). This Court considered and granted preliminary approval of class certification. ECF 48. For the same reasons described in Plaintiffs' Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Settlement (ECF 41), this Court should certify the class for purposes of final approval of the Settlement.

The Court must next determine whether a proposed settlement is fair, reasonable, and adequate under Rule (23)(e). Prior to the 2018 amendment of Rule 23, to determine procedural fairness, Second Circuit Courts looked to the negotiating process that led to settlement, and to determine substantive fairness, they would review the settlement in light of the factors set forth in *City of Detroit v. Grinnell Corp*. (the "*Grinnell* factors"). *See Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001);

11

*City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974). Since the amendments were instituted, the Second Circuit examines the settlement in light of both the new requirements of Rule 23 and the *Grinnell* factors, many considerations of which overlap. *See e.g. In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704, 2020 WL 3250593 (Slip Op.) (S.D.N.Y. June 16, 2020) (granting final approval of class action settlement after consideration of both Rule 23 and the *Grinnell* factors).

Courts examine both procedural and substantive fairness considering the strong judicial policy in favor of settlement—especially in class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *Godson v. Eltman, Eltman, & Cooper, PC*, 328 F.R.D. 35, 52 (W.D.N.Y. 2018) ("Settlements are strongly favored as a matter of policy, because, '[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time.") (internal quotations omitted); *Springer v. Code Rebel Corp*., No. 16-cv-3492, 2018 WL 1773137 at *7 (S.D.N.Y. Apr. 10, 2018) (same*); Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y Sept. 24, 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (quoting *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. Feb. 18, 2005), *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2006)); *see also In re Luxottica Group S.P.A. Secs. Litig*. (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Hadel v. Gaucho*, No. 15-cv 3706, 2016 WL 1060324, at *4 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). "A presumption of fairness may attach to a proposed settlement when the terms of

that settlement were reached by experienced counsel during arm's-length negotiations undertaken after meaningful discovery." *Hart v. RCI Hosp. Holdings, Inc.*, No. 09-cv-3043, 2015 WL 5577713, at *7 (S.D.N.Y. Sept. 22, 2015).

## V.    ARGUMENT

### A.    The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as well as Rule 23

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *GSE Bonds*, 414 F. Supp. at 702, quoting *Wal Mart Stores*, 396 F.3d at 112 (2d Cir. 2005). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Hernandez v. Immortal Rise, Inc*., 306 F.R.D. 91, 99 (E.D.N.Y. 2015); *see also Hall v. ProSource Technologies, LLC*, No. 14-cv 2502, 2016 WL 1555128, at *5 (E.D.N.Y. 2016) (finding the notice sufficient where "[t]he Notice and Claim Form described essential and relevant information in plain terms, including, among other things, relevant background information, the terms of the Settlement Agreement, the allocation methods applicable to the respective subclasses, and the various rights of potential class members, such as the right to opt out of the Settlement Class or object to the instant Final Approval Motion"); *Torres v. Gristede's Operating Corp*., No. 04-CV-3316, 2010 WL 2572937, at *3 (S.D.N.Y. June 1, 2010) ("The Notice is appropriate because it describes the terms of the settlement and provides specific information regarding the date, time, and place of the final approval hearing.").

Moreover, the Settlement Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members as possible. Direct notice was sent to 100% of the Settlement Class Members, reaching 96.98% of the Settlement Class. Admin Decl. ¶ 9. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in the Second Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "*Managing Class Action*

*Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010); *see also*, i.e., *Cicciarella et al v. Califia Farms, LLC*, No. 7:19-cv-08785, 2020 WL 1320866 (S.D.N.Y. 2020) (approving notice that was projected to reach 70% of class members).

### B.    The Settlement Class Should be Certified.

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 619–22 (1997). As Class Representatives set forth at length in their Motion for Preliminary Approval, the proposed Settlement Class satisfies all the requirements of Rules 23(a) and 23(b)(3). The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes.

### C.    The Settlement Terms are Fair, Adequate, and Reasonable, and Warrant Approval.

Federal Rule 23(e)(2) requires certain factors to be considered by a court before granting final approval of a class action settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Before the 2018 revisions to Rule 23(e), the Second Circuit had developed its own list of factors for consideration in determining whether to approve a class action settlement. These factors, known as the *Grinnell* factors[,] include:(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009), citing *Grinnell*, 495 F.2d at 463 (2d Cir. 1974) (abrogated on other grounds). Class Representatives will examine the Settlement for satisfaction of both the Rule 23 factors as well as the *Grinnell* factors that have been historically considered by Second Circuit Courts. *See e.g. GSE Bonds*, 2020 WL 3250593 (granting final approval of class action settlement after consideration of both Rule 23 and the *Grinnell* factors). Here, the Agreement reached by Parties meets the standards set forth by Federal Rules of Civil Procedure and the *Grinnell* factors weigh in its favor. Accordingly, the Court should grant final approval.

### D.    The Settlement Agreement Meets the Requirements of Rule 23 and Should be Approved.

1. <u>The Class Representatives and Class Counsel Have Adequately Represented the Class.</u>

Rule 23(e)(2)(A) requires a Court determine whether "the class representatives and class counsel have adequately represented the class" before approving a settlement. "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *GSE Bonds*, 414 F. Supp. at 692, quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007) (internal quotations omitted).

16

Here Class Representatives have assisted Class Counsel by providing documents, reviewing pleadings, keeping in contact with counsel, remaining available for consultation throughout the settlement negotiations and answering counsel's many questions and reviewing the Settlement Agreement. Class Representatives do not have any conflict with the proposed Class and have adequately represented them in litigation, and in bringing this case to successful resolution with substantial benefits available to the Class. Specifically, Class Representatives are a part of the same Class, suffered the same injury, have the same interest in in protecting their private information from disclosure, and as discussed at length in Plaintiffs' Fees Motion, seeks only modest Service Awards compared with those sought by class representatives in other class actions.

Class Counsel has also adequately represented the Class. Class Counsel is experienced in the litigation, certification, trial, and settlement of class action cases. *See* Klinger MPA Decl., Declaration of William B. Federman in Support of Plaintiffs' Motion for Preliminary Approval, (ECF 41-5), Declaration of Terence R. Coates in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF 41-4. In negotiating the Settlement Agreement, Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other cases involving data breaches and consumer privacy. *Id.* This understanding of the intricacies of the data breach and consumer privacy space provided Class Counsel with the tools and perspective to achieve an outstanding recovery for the Class—and prepared them to litigate this Action to a successful conclusion if necessary.

Before filing the Complaint, Class Counsel investigated the potential claims against Defendant. Class Counsel gained additional information through the litigation process, including informal discovery disclosed during the settlement negotiations. This information was essential to

Class Counsel's ability to evaluate the strength of the Class Representatives' legal claims, the risks of this litigation and the benefits to the Class. Class Counsel also expended resources researching and developing the legal claims at issue. Armed with its knowledge from other data breach and consumer privacy matters and its investigation into this specific case, Class Counsel was well positioned to evaluate the strengths and weaknesses of Class Representatives' and the Class's claims, and the appropriate basis upon which to settle them.

Accordingly, this Court should find Class Representatives and Class Counsel adequate representatives for the Class and weigh this factor in favor of Final Approval.

2.    The Settlement was Negotiated at Arm's Length.

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arms-length." Where a class settlement is reached through arm's length negotiations between experienced counsel, the settlement will enjoy a presumption of fairness. *GSE Bonds*, 414 F. Supp. 3d at 692, *citing In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-174 (S.D.N.Y. 2000).

Here, the Settlement has certainly earned the presumption of fairness. Both Parties were represented by counsel experienced in class action and data breach litigation. Class Counsel has, and is currently, actively litigating against Defendant's counsel in a number of data breach cases across the country. Those cases are and were all hotly contested, with Defendant's counsel routinely filing strong motions to dismiss. There is no question that the Parties stand at arm's-length and stood at arm's-length throughout these settlement negotiations. Thus, the settlement negotiations were free from collusion, conducted at arm's length, and meet the requirement of Rule 23(e)(2)(B).

3.  <u>The Substantial Monetary Relief Provided for the Settlement Class is Adequate.</u>

Rule 23(e)(2)(c) requires examination of the relief provided by the Settlement. This relief is consistent with—and in fact exceeds—relief provided in other similar data breach cases approved by Courts across the United States. *See, e.g., Cece v. St. Mary's Health Care System, Inc.*, No. SU20CV0500 (Ga. Super. Ct. Athens/Clarke Cnty.) (final approval granted of data breach class action settlement on April 4, 2022 with out-of-pocket loss reimbursement of $750 and 2-years credit monitoring); *Jackson-Battle v. Navicent Health Inc*., No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. Aug. 4, 2021) (providing $200 per person for reimbursement of ordinary expenses that include lost time of up to 4 hours of lost time at $15 per hour, and $2,500 in extraordinary expenses, all uncapped in the aggregate); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (providing up to $280 in value to settlement class members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc*., No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member for out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancement).

When, as here, a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, a settlement is reasonable under this factor." *Massiah v. MetroPlus Health Plan, Inc*., No. 11-CV-05669 BMC, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (citations omitted).

19

4. <u>The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor of Final Approval.</u>

The relief to the Settlement Class is more than adequate in light of the costs, risks, and time required to litigate this action through trial and appeal. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc*., No. 07-cv-1143, 2011 WL 754862, at *11 (E.D.N.Y. Feb. 18, 2011). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00-cv-9806, 2007 WL 927583, at *30 (S.D.N.Y. Mar. 27, 2007); *accord Zeltser v. Merrill Lynch & Co*., No. 13-cv-1531, 2014 WL 4816134, at *14 (S.D.N.Y. Sep.23, 2014). "The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley v. Midan Rest. Inc*., No. 14-cv-1693 2016 WL 1274577, at *9 (S.D.N.Y. 2016) ("Most class actions are inherently complex[.]").

This litigation is no different. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). As one federal district court recently observed in finally approving a settlement with similar class relief:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

20

*Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains undecided by the Circuit courts, particularly around damages. For now, cybersecurity breach cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Class Representatives' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any cybersecurity incident case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013).

Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g., In re Hannaford,* 293 F.R.D. 21. Further, if Class Representatives are successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc*., No. 14 -cv-6233, 2015 WL 5444651, at *11 (S.D.N.Y. Sep. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Class Representatives and putative class members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this

factor weighs heavily in favor of final approval. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-cv-3124, 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017) (class settlement "eliminates the risk, expense, and delay inherent in the litigation process.")

While Class Representatives are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant consistently denied the allegations raised by Class Representatives and made clear at the outset that it would vigorously defend the case. Through the Settlement, Class Representatives and Class Members gain significant benefits without having to face further risk of not receiving any relief at all. This weighs in favor of final approval.

     5.   <u>The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement.</u>

The method for processing Settlement Class Members claims weighs in favor of final approval. The Parties have retained a very experienced Settlement Administrator, Angeion, who is highly skilled in processing class claims and distributing the proceeds to claimants. Distribution of relief is effective in that all Settlement Class Members are eligible to make Claims for reimbursements for expenses and time related to the Data Incident, and payments will be made promptly upon the Effective Date of the Settlement pursuant to the terms outlined in the Settlement Agreement.

As explained by the 2018 Committee Notes, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." The proposed method of processing claims here strikes that delicate balance, and this factor weighs in favor of approval.

6. <u>The Terms of the Proposed Award of Attorneys' Fees Weigh in Favor of Final Approval.</u>

On June 17, 2024, Class Representatives moved for an award of combined attorneys' fees and expenses of $600,000. ECF 59. As set out more fulsomely in the attorneys' fee motion, the fees are reasonable and within the range regularly approved by courts in this district. Because the attorneys' fees and expenses Class Representatives seek are in line with typical awards in this Circuit, this factor weighs in favor of final approval.

7. <u>There Are No Agreements Required to Be Identified Under Rule 23(e)(3).</u>

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

8. <u>The Settlement Treats Class Members Equitably Relative to Each Other.</u>

Each member of the Settlement Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award. As described above, each Settlement Class Member is eligible to make a Claim for the same ordinary expense reimbursements, as well as the credit monitoring/identity theft protection offered. Additionally, any Settlement Class Member who felt he/she had a more valuable Claim had the opportunity to opt-out of the Settlement and pursue it. *McWhorter v. Ocwen Loan Servicing LLC*, No. 2:15-cv-01831, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (finding settlement class members' ability to exclude themselves form a settlement as a symbol of equitable treatment and weighing it in favor of final approval).

E.    **The Settlement Also Warrants Approval in Light of the *Grinnell* Factors Traditionally Considered by Second Circuit Courts.**

    1.    *Grinnell* Factor 1: The complexity, expense, and likely duration of litigation weighs in favor of approval.

The costs, risks, and delay of continued litigation weigh in favor of settlement approval. The risks Class Representatives faced in this litigation are substantial and cannot be disregarded. Aside from the potential that either side will lose at trial, Class Representatives anticipate incurring substantial additional costs in pursuing this litigation further. As discussed above, data breach litigation is difficult, complex, and the rapid evolution of case law makes outcomes uncertain. Moreover, while early settlement has allowed costs to stay modest, and the Settlement Agreement provides for such costs to paid for separate and apart from the funds available to the Class— protracted litigation would only serve to increase costs and have a potentially negative affect on Class recovery, which is itself far from certain. Continued litigation would also increase the burden on the Court, without any guaranteed benefit to Class Representatives or Settlement Class Members. "Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). Where a settlement, like here, "will alleviate the need for judicial exploration of . . . complex subjects [and[ reduce litigation costs" this factor weighs in favor of approval. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d at 1324 (S.D. Fla. 2005).

2.  *Grinnell* Factor 2: Class reaction signals approval of the Settlement Agreement.

Courts consistently determine that the reaction of a class to settlement is "perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp*., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); Fed. R. Civ. P. 23(e). Here, 4,636 Settlement Class Members have submitted timely claims. Only ten Settlement Class Members opted out, and <u>none</u> objected. This is an outstanding result and a clear signal of the Settlement Class's approval of the Settlement.

The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc*., No. 94-cv-5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003); *see also Wal-Mart Stores*, 396 F.3d 96 (affirming approval of class action settlement with 18 merchant objectors). Here, the reaction of the class has been overwhelmingly positive. There have been no objections and only ten (10) timely requests for exclusion. The Class has spoken and overwhelmingly approve the Settlement. This factor weighs in favor of approval of the Settlement

3.  *Grinnell* Factor 3: The stage of litigation and discovery completed favors approval.

Courts encourage the efficient resolution of class actions where warranted. Early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, LP*, No. 09-cv-10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *Diaz v. E. Locating Serv. Inc*., No. 1:10-cv 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Secs. Litig*., No. 02-cv-6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted

by the circumstances of the case). The central question often considered by courts in examining the stage of litigation is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 537 (3d. Cir. 2004) (quoting *In re Cendant Corp. Litig*., 264 F.3d 201, 235 (3d Cir. 2001) (internal quotation marks omitted). Here the Parties acted responsibly in reaching an early settlement of this case. As stated *supra*, Settlement Class Counsel is experienced in class action and data breach litigation. The Settlement was also only reached after extensive investigation, informal discovery, expert consultations, and gathering information from Class Representatives. Accordingly, early settlement was appropriate and this factor weighs in favor of approval.

        4.   <u>*Grinnell* Factors 4, 5, and 6: The risks of establishing liability, damages, and maintaining a class action through trial weigh in favor of settlement approval.</u>

Although Class Representatives believe in the merits of their case at the outset, continued litigation involves significant risk. *See In re Painewebber Ltd. P'ships Litig*., 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id., quoting In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv*., Inc., No. 3-cv-8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation.") citing *Frank v. Eastman Kodak Co*., 228 F.R.D. 185 (W.D.N.Y. 2005). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian and German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 177 (S.D.N.Y. Jan. 6, 2000) (internal quotation marks omitted).

As noted above, data breach litigation is complex and the case law is rapidly evolving. Continued litigation would involve extensive motion practice, including a likely motion for

summary judgment, and ultimately a trial on the merits. Class Representatives would also have to both gain and maintain class certification. This is far from a certain proposition in data breach litigation. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Class Representatives and Settlement Class Members to receive immediate and certain relief. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

      5.   *Grinnell* Factor 7: The ability of the Defendant to withstand a greater judgment is not at issue here.

Defendant provides no evidence demonstrating that it could not withstand a greater judgment here. However, even if Defendant could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.,* 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting final approval.

      6.   *Grinnell* Factors 8 and 9: The Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation.

As discussed above, the Settlement guarantees Settlement Class Members real relief their injuries. The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Class Representatives understand and appreciate that DialAmerica will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Class Representatives to the risks inherent in trying to achieve and maintain class certification and prove liability—both factors considered under the test for final approval established by *Grinnell*.

It is obvious that Class Representatives' success at trial is far from certain. Moreover, every day that passes is another day that the Class Representatives and Settlement Class Members go without the reimbursement provided by the Settlement. Through the Settlement, Class Representatives and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

## VI.    CONCLUSION

Class Representatives have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members who make a Claim significant relief in the form of cost and time reimbursements, financial asset and credit monitoring protections, and equitable relief consisting of increased data security safeguards. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of both the *Grinnell* factors and the revised Rule 23 factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 41) and Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs and Service Awards (ECF 59), Class Representatives respectfully requests this Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class and appoint Settlement Class Counsel and Class Representatives as representatives for the Class, award Class Representatives a service award in the amount of $2,000 each, grant Settlement Class Counsel combined attorneys' fees and expenses of $600,000, and grant final approval of this Settlement.

Dated: August 5, 2024

Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Terence R. Coates (admitted *pro hac vice*)
**MARKOVITS, STOCK**
**& DEMARCO, LLC**
119 E Court St., Suite 530
Cincinnati, OH 45202
Tel: (513) 651-3700 / Fax: (513) 665-0219
tcoates@msdlegal.com

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

Joseph P. Guglielmo (CT 27481)
Erin Green Comite (CT 24886)
**SCOTT+SCOTT ATTORNEYS AT**
**LAW LLP**
156 S. Main St., P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
jguglielmo@scott-scott.com
ecomite@scott-scott.com

Attorneys for Class Representatives and the
Proposed Class

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 5, 2024 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.


*/s/ Gary M. Klinger*
Gary M. Klinger