UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLEN MOURE, individually and on behalf of all others similarly situated,<br>*Plaintiff*,<br><br>v.<br><br>DIALAMERICA MARKETING, INC.,<br>*Defendant*. | )<br>)<br>)   Case No. 3:22-cv-625 (OAW)<br>)<br>)<br>)<br>)<br>)<br>) |

**RULING ON PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**THIS ACTION** is before the court upon Plaintiff's Motion for Final Approval of Class Action Settlement.  Pl.'s Mot. for Final Approval of Class Action Settlement, ECF No. 68.  Plaintiff Allen Moure, individually and on behalf of similarly situated individuals, brings this class action against Defendant DialAmerica Marketing, Inc. ("DialAmerica"), alleging violations of the Federal Trade Commission Act of 1914 (the "FTC Act"), 15 U.S.C. § 45 *et seq.*, among others.  Compl. 17, ECF No. 1.  Plaintiff moves for final approval of the class action settlement.  For the reasons discussed herein, and withholding judgement as to attorney's fees and expenses, the motion is **GRANTED**.[1]

## I. BACKGROUND

Familiarity with the underlying facts and procedural history of this case as set forth in the court's previous orders is presumed.  *See* Ruling on Pl.'s Mot. for Prelim. Approval of Settlement, ECF No. 48 ("Ruling on Prelim. Approval").

---

[1] Plaintiff's Motion for Attorney's Fees and Expenses, ECF No. 59, will be ruled upon separately from the instant ruling upon Plaintiff's Motion for Final Approval of Class Action Settlement.

DialAmerica is a telemarketing and call center headquartered in New Jersey. Mem. in Supp. of Pl.'s and Class Representatives' Mot. for Final Approval of Class Action Settlement 2, ECF No. 68-1 ("Mot. for Final Approval"). To receive payment and certain benefits, DialAmerica employees must disclose personally identifiable information ("PII") to the company.[2] *Id.* Between February 2, 2021 and July 9, 2021, DialAmerica was the target of a cyberattack in which "an unauthorized actor [] gained access to certain of DialAmerica's systems" and viewed or took data. *Id.* at 2–3. Employees' PII was potentially compromised and exfiltrated during the cyberattack. *Id.* at 3.

On May 3, 2022, Plaintiff, a former DialAmerica employee, commenced this action individually and on behalf of other employees whose PII was potentially compromised by the cyberattack. *See* Compl. ¶ 16. The parties engaged in mediation with the Honorable Wayne R. Andersen of JAMS, and in December 2022 agreed on the terms of a proposed settlement. Mot. for Final Approval at 4–5. On February 8, 2023, Plaintiff filed an unopposed Motion for Preliminary Approval, seeking certification of a settlement class and preliminary approval of the proposed settlement. Pl.'s Unopposed Mot. for Prelim. Approval of Class Action Settlement, ECF No. 41 ("Mot. for Prelim. Approval").

---

[2] PII includes Social Security numbers, names, addresses, dates of birth, driver's license or state identification numbers, passport numbers, health insurance information, and financial account information. Mot. for Final Approval at 2.

On April 1, 2024, this court granted the Motion for Preliminary Approval. *See* Ruling on Prelim. Approval. The court certified the class,[3] appointed class counsel,[4] appointed class representatives,[5] named a Notice Specialist and Claims Administrator,[6] approved the proposed modes of notice and issuance of notice, and preliminarily approved the settlement. *See* Ruling on Prelim. Approval at 17–18.

The Notice Specialist and Claims Administrator conducted direct notice by first class mail via the United States Postal Service ("USPS") and set up a case-specific settlement website, www.DialAmericaDataSettlement.com. Ex. 1, Decl. of Katrina R. Ashley Re: Notice and Administration ¶¶ 7–11, ECF No. 68-2 ("Ashley Decl."). The Claims Administrator sent notice by mail to 221,135 identified class members. *Id.* ¶¶ 7–8. It activated a toll-free hotline with an interactive voice response system that provided answers to frequently asked questions about the settlement agreement. *Id.* ¶¶ 12–13.

---

[3] The Settlement Class is defined as follows:
> All persons whose full name and other personally identifying information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021. The Settlement Class specifically excludes: (i) DialAmerica and its respective officers and directors; (ii) all members of the Settlement Class who timely and validly request exclusion from the Settlement Class; (iii) the Judge and Magistrate Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleas nolo contendere to any such charge.

Ruling on Prelim. Approval at 7. The Settlement Class contains a California Settlement subclass defined as follow:
> All persons whose full name and other personally identifying information and/or protected health information was potentially accessed during the data security incident that occurred in July 2021, and who were residing in California between February 2, 2021 and July 9, 2021.

Mem. in Support of Pl.'s Unopposed Mot. for Prelim. Approval 5, ECF No. 41-1.

[4] The court appointed Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Terence R. Coates of Markovits, Stock & Demarco, LLC, and William B Federman of Federman and Sherwood as class counsel. Ruling on Prelim. Approval at 9.

[5] The court appointed Plaintiff Allen Moure, Daniel Blanco, and Rafael Blanco as class representatives. Ruling on Prelim. Approval at 10. Daniel and Rafael Blanco are the named plaintiffs in a separate class action against Defendant in the Superior Court of California. *See Blanco et al v. DialAmerica Marketing, Inc.*, No. 37-2022-00021920-CU-BC-CTL.

[6] The court appointed Angeion Group LLC as the Notice Specialist and Claims Administrator. Ruling on Prelim. Approval at 12.

Finally, on the settlement website, class members could submit a claim form online, or download a claim form to be returned by mail. *Id.* ¶¶ 10–11.

On August 19, 2024, the court held a hearing to determine whether it should approve the final settlement agreement in accordance with Federal Rule of Civil Procedure 23(e)(2). ECF No. 74. Class counsel represented that the Claims Administrator received approximately 4,636 claims from class members, ten timely requests for exclusion, and no objections to the settlement. Mot. for Final Approval at 10–11. No class members appeared at the hearing to contest the proposed settlement.

## II. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23(e)(2), a district court must approve of a proposed settlement agreement that will result in the dismissal of a class action. Final approval of a settlement is only permissible "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409 (DJS), 2011 WL 13234815, at *2 (D. Conn. Jan. 25, 2011). This is to protect the rights of absentee class members from collusive agreements, particularly in the context of settlement-only classes. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir. 1987) (noting that Rule 23(e) "places the court in the role of protector of the rights of the class when such a settlement is reached and attorneys' fees are awarded") (internal citation omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997) (underscoring the vulnerability of absent class members' rights and interests in the settlement class context).

To determine whether a settlement is fair, reasonable, and adequate, the district court considers both its procedural fairness by examining the "negotiating process leading up to the settlement," and its substantive fairness by evaluating its terms. *See In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023) (citing *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009)). Pursuant to Rule 23(e)(2), the court must find that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In the Second Circuit, courts also take into account the following nine factors set out in *City of Detroit v. Grinnell Corp.*, to evaluate the substantive fairness of a proposed agreement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

5

## III. DISCUSSION

As set forth below, the court finds that the notice provided to absent class members complies with Rule 23, and the proposed settlement is fair, reasonable, and adequate. The court therefore certifies the settlement class and approves the proposed settlement.

### A. Notice

"For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be via "United States mail, electronic means, or other appropriate means." *Id.*

To protect the due process of absent class members, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)), *aff'd sub nom.* 107 F.3d 3 (2d Cir. 1996). As to courts within the jurisdiction of the United States Court of Appeals for the Second Circuit, settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot v. Pierson*, 607 F. App'x 73, 73–74 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).

The court preliminarily approved Plaintiff's notice program and forms, *see* Ruling on Prelim. Approval at 11–13, and now concludes that the parties satisfied the court's order as to notice. Upon review of the proposed claim form, short form notice, and long form notice, the court finds that they comply with Rule 23(c)(2)(B)(i)–(vii) by clearly and concisely stating in plain, easily understood language the nature of the action, the definition of the class certified, the relevant claims, issues, and defenses, that class members may enter an appearance through an attorney, that class members may request exclusion, the time and manner to request exclusion, and the binding effect of class judgment. *See* Claim Form, Ex. A, ECF No. 41-2; Short Form Notice Ex. B, ECF No. 41-2; Long Form Notice, Ex. C, ECF No. 41-2.

In addition, the Claims Administrator successfully executed the notice program. Short form notice was mailed to 221,135 individuals identified by defense counsel as class members. Ashley Decl. ¶¶ 7–8. After it remailed those notices returned as undeliverable to updated addresses, the Claims Administrator estimates that approximately 97% of the 221,135 individuals were reached. *Id.* ¶ 9. Long form notice was posted on the case-specific settlement website, which received "15,873 website visits by 10,494 unique users totaling 29,280 pageviews." *Id.* ¶ 11.

This program satisfied the requirements of the Federal Rules and due process by providing the "best notice that is practicable under the circumstances." Fed. R. Civ. Pro. 23(c)(2)(B).

### B. Procedural Fairness

In evaluating a settlement's procedural fairness, the court "must review the negotiating process leading up to the settlement . . . to ensure that the settlement

7

resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *5 (quoting *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013)).  "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Visa U.S.A., Inc.*, 396 F.3d at 116 (quoting *Manual for Complex Litigation*, *Third* § 30.42 (1995)).

The court finds that the proposed settlement satisfies the procedural requirement.  First, class counsel and the class representatives have adequately represented the class.  The class representatives do not have any conflict with the proposed settlement class because they suffered the same injury as the wider class, and they seek a comparatively reasonable service award of $2,000 each.  *See Milkman v. Am. Travellers Life Ins. Co.*, No. 011925, 2002 WL 778272, at *31 (Pa. Com. Pl. Apr. 1, 2002) ("For anything more than modest sums in the range of $2,000–3,000, the amounts of [class representative] awards should be based on the amount of time and money expended . . . or other special circumstances") (quoting *National Association of Consumer Advocates Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 176 F.R.D. 375, 387 (1997)).  Moreover, the class representatives diligently assisted class counsel by providing documents, reviewing pleadings, and answering counsel's questions throughout settlement negotiations.  *See* Mot. for Final Approval at 17.

Additionally, class counsel is experienced in litigating complex data breach class actions and general consumer class actions.  *See* Ex. 3, Decl. of Terence R. Coates ¶ 4, ECF No. 41-4; Ex. 4, Decl. of Williams B. Federman ¶ 8, ECF No. 41-5.  Class

counsel has been involved in this litigation since 2021 and is intimately familiar with factual and legal elements of this matter, having drafted the original complaint, attended mediation, and assisted with drafting settlement papers. Coates Decl. ¶ 1–2. The court therefore assigns "great weight" to its recommendation. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (quoting *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992)).

Second, the parties' negotiations were conducted at arm's length and with the assistance of an experienced mediator. Both parties were represented by qualified, experienced counsel, and agreed that "good faith consideration of an early resolution was warranted," which led to formal mediation. Mot. for Final Approval at 4–5. During mediation, the parties shared "a significant exchange of information" that allowed each camp to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. *Id.* Thereafter, the parties conducted further negotiations and reached an agreement. *See id.* The court is not aware of any evidence suggesting that the negotiations were collusive. Further, mediation was presided over by the Honorable Wayne R. Andersen (Ret.) of JAMS, lending additional credibility to the negotiations. *See id.*; *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *5 ("That the negotiations included active participation by an experienced mediator supports finding that the Settlement is procedurally fair."); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a mediator's involvement in settlement negotiations "helps to ensure that proceedings were free of collusion and undue pressure").

C. <u>Substantive Fairness</u>

The court makes the following findings and concludes that the balance of the *Grinnell* factors supports the determination that the terms of the proposed settlement are fair, reasonable, and adequate.

The first *Grinnell* factor requires the court to consider the complexity, expense and likely duration of the litigation. This factor weighs in favor of settlement. Litigating a class action with members numbering in the hundreds of thousands would be exceedingly complex and costly. *See* Ashley Decl. ¶¶ 7–8 (noting defense counsel identified at least 221,135 individuals as class members). Here, early settlement has moderated costs, whereas ongoing litigation would lead to great expense, potentially to the detriment of class recovery. Moreover, the "rapid evolution of case law" in data breach litigation makes the outcome of trial uncertain. Mot. for Final Approval at 24.

As to the second *Grinnell* factor, the reaction of the class to the settlement was positive. "One of the factors most courts consider is the reaction of the absent class members, specifically the quality and quantity of any objections and the quantity of class members who opt out." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *7 (quoting 4 *Newberg on Class Actions* § 13:54 (5th ed.)). Here, there were no objections to the settlement and only ten requests for exclusion, Mot. for Final Approval at 25, which overwhelmingly weighs in favor of settlement, *Visa U.S.A., Inc.*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal citation omitted).

The third *Grinnell* factor requires the court to consider the stage of the proceedings, and the amount of discovery completed. This inquiry is "is relevant to the

10

parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). This matter was settled early, before substantial discovery or litigation of dispositive motions.[7] Nonetheless, the court finds that the parties sufficiently investigated the facts to intelligently evaluate the strengths and weaknesses of the claims and defenses. Settlement was reached after "extensive investigation, informal discovery, expert consultations, and gathering information from Class Representatives." Mot. for Final Approval at 26. Moreover, formal discovery is not a prerequisite to finding the parties established a clear understanding of the strengths and weaknesses of their cases. *D'Amato*, 236 F.3d at 87 ("[A]lthough no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information," which weighed in favor of settlement approval).

The fourth and fifth *Grinnell* factors require the court to consider the risk of establishing liability and damages. The sixth factor evaluates the risk of maintaining the class action through trial. These factors weigh heavily in favor of settlement. If this matter proceeds, the parties will likely litigate class certification, raising complicated questions of Article III standing and class membership. *See In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (finding defendants seeking individualized proof of plaintiffs' data breach injuries at trial weighs in favor of settlement). Indeed, Defendant sought to

---

[7] While Defendant filed a motion to dismiss, ECF No. 17, the parties reached settlement before Plaintiff filed a response.

11

dismiss this matter for lack of standing, arguing that Plaintiff failed to allege an actual or imminent injury because he "has not alleged any actual or attempted misuse of his personal information." Mem. of Law in Support of Def.'s Mot. to Dismiss 10, ECF No. 18 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). Rather, "he only generally alleges an increased risk of future harm in the form of potential identity theft or fraud."[8] *Id.*

In data privacy litigation, Article III's "injury in fact" requirement is in tension with how data breaches typically harm individuals. *See, e.g.*, Danielle Keats Citron & Daniel J. Solove, *Privacy Harms*, 102 B.U. L. Rev. 793 (2022) (explaining how standing doctrine's injury requirement is misaligned with how privacy violations actually harm victims). Cybercriminals tend not to announce whose data they successfully misappropriate, therefore victims are not aware of the extent of their injuries at the time of litigation, let alone have individualized proof. Accordingly, the court finds that the significant risks of maintaining the class action and establishing liability and damages weigh in favor of settlement.

The seventh *Grinnell* factor requires the court to consider the ability of the defendant to withstand a greater judgment. While Defendant "provides no evidence demonstrating that it could not withstand a greater judgment here," Mot. for Final Approval at 27, this alone does not render the settlement unfair, particularly where, as here, "other *Grinnell* factors weigh heavily in favor of settlement," *In re Synchrony Fin.*

---

[8] The court notes that, in accordance with *TransUnion*, a data harm like Plaintiff's confers standing because "[t]he exposure of Plaintiffs' PII to unauthorized third parties 'bears some relationship' to the 'well-established common-law analog: public disclosure of private facts.'" *Jones v. Sturm, Ruger & Co., Inc.*, No. 3:22-CV-1233 (KAD), 2024 WL 1307148, at *3 (D. Conn. Mar. 27, 2024) (quoting *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 285–86 (2d Cir. 2023)).

*Sec. Litig.*, 2023 WL 4992933, at *9 (quoting *D'Amato*, 236 F.3d at 86).  Therefore, the court does not need to determine whether Defendant could withstand a greater judgment, as the balance of *Grinnell* factors weigh in favor of settlement.  *See id.*

The eighth and ninth *Grinnell* factors require the court to consider the reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation.  The settlement agreement provides class members up to $600 reimbursement of ordinary expenses and up to $6,000 reimbursement for extraordinary expenses.  Mot. for Final Approval at 6–7.  California subclass members are eligible for an additional $50.  *Id.* at 7.  All settlement class members are eligible for identity protection services for two years, and Defendant is obligated to implement and maintain cybersecurity enhancements.  *Id.* at 7–8.  These benefits are consistent with awards granted in comparable data security class actions.  *See Parsons v. Kimpton Hotel & Rest. Grp., LLC*, Case No. 16-cv-05387-VC, Doc. 117 (N.D. Cal. July 11, 2017) (granting class members up to $250 for ordinary expenses and up to $10,000 for extraordinary expenses); *see Corona-Cantu v. Ingo Money Inc.*, Case No. 1:24-cv-03023-MHC, Docs. 17, 18 (N.D. Ga. Jan. 15, 2025) (granting preliminary approval for settlement agreement providing up to three years of credit monitoring services and up to $5,000 in reimbursement for documented losses).  Further, the court finds these benefits appropriate because they provide immediate and guaranteed relief to class members for their injuries.  Considering the significant uncertainty of proceeding with litigation, the court finds the settlement fund to be reasonable.

Seven of the nine *Grinnell* factors firmly weigh in favor of the proposed settlement. Accordingly, the court finds that the settlement is substantively fair, reasonable, and adequate.

IV.   **CONCLUSION**

For the reasons discussed herein, it is **ORDERED:**

1. Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. 68) is **GRANTED.**

    a. Final approval of the terms of the Settlement Agreement (ECF No. 41-2) is granted**.**

    b. The Settlement Class and California Subclass, as defined in section 1.31 and 1.2, respectively, of the Settlement Agreement (ECF No. 41-2), are certified.

    c. The parties, their respective counsel, and the Claims Administrator hereby are instructed to implement the settlement in accordance with this judgment and the terms and time frame set forth in the Settlement Agreement.

2. The following ten individuals have timely and properly excluded themselves from the Settlement Class (Exclusion Report, Ex. C to Ashley Decl., ECF No. 68-2) and, therefore, are not members of the Settlement Class and are not bound by the terms of the Settlement Agreement or this judgment:

| No. | First Name | Last Name |
|---|---|---|
| 1 | Letisha | Osearo |
| 2 | Carl | Borda |
| 3 | Amy | Daniel |

|    |           |                              |
|----|-----------|------------------------------|
| 4  | Muneer    | Uddin                        |
| 5  | Emonica   | Dames                        |
| 6  | Edward    | Edward Webbinar (A.K.A. Webb)|
| 7  | Amanda    | Scrivano                     |
| 8  | Jacob     | Flentke                      |
| 9  | Stephen   | Johnson                      |
| 10 | Benedicto | Perez                        |

3. Upon disposition of Plaintiff's Motion for Attorney's Fees, Expenses, and Class Representative Service Awards (ECF No. 59), this matter shall be **DISMISSED** with prejudice.

4. Without affecting the finality of this judgment, the court will retain jurisdiction over the subject matter and the parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

**IT IS SO ORDERED** in Hartford, Connecticut, this 7th day of April, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE